ROY THURSTON V. THE STATE.

No. 18889.   Delivered March 24, 1937.
Rehearing Denied April 14, 1937.

The opinion states the case.

*L. B. Fowler,* of Nacogdoches, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary; punishment, five years in the penitentiary.

Mrs. Mattie Eaves had a boarding house in Nacogdoches, Texas. Joe Lambert had a room in said boarding house on August 16, 1936. The front and back doors of Mrs. Eaves' house were closed on the occasion here involved. Mrs. Eaves got up on the morning of this occurrence about 5:30. If anyone else was awake and up at the time, the record fails to disclose it. Mrs. Eaves said she heard a commotion upstairs in the neighborhood of Lambert's room, and heard the commotion coming downstairs, and went to the dining room door, at which time she heard the front screen door of the hall slam, and when she got to that door a man was running off in the direction of town. The party was running south. The street she lived on was about half a block off the main street, and runs north between Kennedy's Drug Store and a hardware store. Joe Lambert testified that he had a room at Mrs. Eaves' boarding house or hotel. About six o'clock on the morning in question he heard some one and the noise awaked him. A party was in the room. Witness said it was appellant. Appellant was turning, walking away from the dresser in his room. He said appellant ran downstairs, taking three or four steps at a time, and ran out of the front door; witness heard the door slam. The front door was a screen door with spring hinges and the spring pulls the door to. Witness said it would take force to open that door. Witness immediately missed his billfold from the dresser where he had put it the night before. The billfold had about seven dollars in money in it. It was returned to him by officer

Drewry. Witness said that the door to his room was open on the night in question.

Mr. Martin testified that on the morning referred to he was at his cafe not far from Mrs. Eaves' place. His attention was attracted to some one on the opposite side of the street. Witness said: "The thing that attracted my attention was this defendant coming around the corner running; he came from towards Mrs. Eaves'." He said the party stopped where a car was parked near Mr. Zeve's store. The car was a V-8 sedan with an Oklahoma license. There were two other people in the car. When the defendant ran up to the car he said "Crank it and let's go." The parties in the car did not seem to pay any attention, and witness said the man shook them and with a curse said: "G—d damn it, crank the car and let's get going and get out of town." Witness took the car number as they were driving off. He further said it was not over half a minute after he saw this defendant come around the corner running down to the automobile and leaving in the car before Joe Lambert came around the corner.

Witness Hudman testified that appellant and another man came to his place the night before the alleged burglary in an automobile,—a Ford V-8 sedan with an Oklahoma license. On the morning of the burglary witness got in the car with appellant and another party and went up on the street about four o'clock near Nance's cafe, about where Zeve's store was. They all went in Nance's cafe and got some coffee, and he and the other party went back to the car, and appellant went away somewhere. It was about five o'clock. Appellant was gone about forty or fifty minutes. Witness said when appellant came back he said "Let's go." Witness was under the steering wheel, and appellant said "I am in a hurry; let's go." Examined again about what appellant said when he came back to the car, witness stated appellant said "I am in a hurry." Officer Drewry said he got the billfold referred to, and shown him in court, at Kilgore when appellant was under arrest.

There are three bills of exceptions. Bill No. 1 complains of the refusal of the court to tell the jury that the defendant had the right to enter said hotel as a guest, and that if after entering the hotel he formed an intent to enter the private room of Joe Lambert, he would not be guilty as charged. The charge was properly refused. There is not a word of testimony in the record that defendant entered the hotel as a guest. Mrs. Eaves was up and about the first floor of her boarding house, and said that she always met people in the hall who wanted a room,

and waited on them. She heard nothing of appellant's presence until she heard the commotion in Lambert's room.

Bill of exceptions No. 2 complains because the court did not instruct the jury if the defendant entered the hotel through the public entrance and into the lobby, that this would not constitute a breaking because said hotel was a public place; that defendant had the right to enter the hotel as a guest. We repeat as above, there is not a word of testimony in the record indicating that appellant entered the hotel as a guest. A hotel or a store or a public auditorium may be burglarized by some one who enters same for the purpose of stealing. The fact that it is a public place would not prevent its being burglarized. Courts are under no duty to give in charge to the jury instructions not supported by any testimony.

Bill of exceptions No. 3 was properly refused for the same reasons above advanced. Appellant did not testify nor introduce any witness whose testimony suggested that he entered said house for any other purpose except to commit theft.

Appellant argues in this court that the indictment, having stated that he entered the house of Mrs. Eaves without her consent and with intent to take her property,—is not supported by proof that he took the property of Joe Lambert. Appellant appears to be a stranger in the town of Nacogdoches. The question for the jury to determine was the intent with which he broke and entered Mrs. Eaves' house. It would be idle for us to say that the jury should have concluded that when he entered the house he intended to steal the specific property of any particular person. Evidently he entered the house with intent to steal, and we have held in many cases that this would make out a case of burglary. See Alexander v. State, 31 Texas Crim. Rep., 359; Mullens v. State, 35 Texas Crim. Rep., 149; Love v. State, 82 Texas Crim. Rep., 411. We have always held that where one burglarized a house with the intent to steal property belonging to a certain person, but while in same he steals the property of some other person, this would not operate to prevent his being convicted for burglarizing the house charged. See Johnson v. State, 48 Texas Crim. Rep., 339; Polk v. State, 60 Texas Crim. Rep., 462.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In his motion for rehearing the appellant challenges the correctness of the court's opinion in holding that the entry of the appellant of the boarding house of Mrs. Eaves constituted a burglarious breaking and entry, and in support of his contention he cites the case of Edwards v. State, 37 S. W., 438. The uncontroverted and proven facts in the present instance, both in principle and practice, are contrary to the position taken by the appellant. The testimony, as detailed in the original opinion, is such as to characterize the transaction as one in which the entry was made into the private room of an occupant of a boarding house. The evidence, as well as the authorities cited in the opinion, seems conclusive against the contention of the appellant. See Holland v. State, 45 Texas Crim. Rep., 172; Alinas v. State, 63 Texas Crim. Rep., 272; Alinas v. State, 63 Texas Crim. Rep., 371.

From Tex. Jur., Vol. 7, p. 751, sec. 9, we take the following quotation:

"The office, dining-room or kitchen of a hotel is not a private residence, even though the proprietor occupies certain rooms of the hotel as sleeping apartments. *But each room of a hotel is the private residence of the occupant of the room; and each room of a dormitory is the private residence of the occupant thereof.*"

Deeming the case to have been properly disposed of in the original opinion, the motion for rehearing is overruled.

*Overruled.*