**Freddy Albert Cardenas ROBLES,
Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 488–83.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 15, 1984.

Donald W. Rogers, Jr., Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr., Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ODOM, Judge.

Appellant was convicted of burglary of a habitation with intent to commit theft. The Court of Appeals affirmed the conviction. Appellant's petition for discretionary review was granted to consider appellant's challenge to the sufficiency of the evidence to prove entry *with intent to commit theft* as alleged.

The opinion of the Court of Appeals accurately summarized the facts shown at trial:

"On the morning of August 7, 1980, the appellant, by exhibiting a handgun and threatening the complainant, forced his way into the home of complainant, Richard Merrill, president of the First City National Bank of Houston. Once inside the house, the appellant pulled out a cassette tape player and played a tape explaining that appellant was part of a group and that the purpose of appellant's presence was to take Merrill to the First City National Bank in order to withdraw an unspecified sum of money. Unknown to appellant, the police had been called by Mrs. Merrill and when they arrived, the appellant attempted to escape with Mr. Merrill and Merrill's son. His escape attempt was thwarted by the police, however, and the appellant was persuaded to surrender to the police."

It is clear that appellant entered the habitation with intent to complete a criminal scheme that had as its ultimate purpose to obtain money from the First City National Bank. The resolution of the issue, i.e., whether the evidence proves the element of the burglary alleged that appellant entered *with intent to commit theft,* must be determined by the meaning of the burglary statute. V.T.C.A., Penal Code Sec. 30.02 provides in relevant part:

"A person commits an offense if, without the effective consent of the owner, he:

"(1) enters a habitation ... with intent to commit a felony or theft; ... "

Appellant contends burglary with intent to commit theft requires an intent to appropriate property from within the burglarized premises. The Court of Appeals held to the contrary:

"The burglary statute, Section 30.02(a)(1), of the Texas Penal Code, quoted above, does not specifically require an intent to commit theft from within the premises entered. While that would be the usual burglary situation, it is not the only one.

"The evidence did overwhelmingly show that the appellant had an intent to commit theft, namely, to appropriate a large sum of money from the First City National Bank by terrorizing Merrill, the President of the Bank. There can be no doubt that the appellant had this intent before he entered the Merrill house, since he used a pre-recorded tape to state his demand. Moreover, there is a clear connection between the entry and the intent to steal, since gaining entry was critical to the success of the appellant's plan to extort the money. Although this crime was far different from the usual burglary, the evidence was not at variance with the indictment or the requirements of § 30.02(a)(1) of the Penal Code. The appellant's first ground of error is overruled."

The following paragraph and citations constitute the entire argument by appellant presented to this Court on the issue under consideration:

"The Petitioner contends intent to commit theft means intent to steal from the burglarized premises. The Court of Appeals held § 30.02(a)(1) Penal Code included basically intent to steal from any location irrespective of connection with or proximity to the entered premises. This holding is overly broad and expansive of the motion [sic] originally contemplated by the Legislative [sic] in enacting said statute. See the following cases: *Simms v. State,* 2 Tex.App. [110] (Tex.Cr.App. 1877); *Conoly v. State,* 2 Tex.App. 412

(Tex.Cr.App.1877). Compare: *Perkins v. State*, 489 S.W.2d [917] 412 [(Tex.Cr.App. 1973)]; *Shipp v. State*, 482 S.W.2d 870 [(Tex.Cr.App.1972)]; *Thurston v. State*, [132 Tex.Cr.R. 287], 103 S.W.2d 770 [(1937)]; *O'Brien v. State*, [27 Tex.App. 461], 11 S.W. 459 [(1889)]; and *Wilson v. State*, 18 Tex.App. [270 (1885)]."

First, we note that appellant mistates the holding of the Court of Appeals. That court did not hold that any intent to commit theft "irrespective of connection with or proximity to the entered premises" is sufficient. To the contrary, the Court of Appeals specifically held there was shown "a clear connection between the entry and the intent to steal, since gaining entry was critical to the success of the appellant's plan to extort the money."

We also find that none of the cases cited by appellant held that the intent to commit theft required for burglary means an intent to steal from the burglarized premises. The earliest case, however, does contain some language that appears to support appellant's position. In *Simms v. State*, 2 Tex.App. 110, the Court found reversible error for failure of the trial court to charge the law applicable to the case. In reaching this conclusion the Court examined recent amendments to the law of burglary, theft, and theft from a house:

"The appellant in this case was indicted and convicted for burglariously entering, by force and fraud, a dwelling-house, in the night-time, with the intent to commit the crime of theft of two bed-quilts, of the value of $10.

"Article 724 of the Penal Code (Pasc. Dig., Art. 2359) was amended by act of the fifteenth legislature, approved August 21, 1876, and which is to be found in Pamphlet Laws, 231. As amended, the law now reads as follows:

"'The offense of burglary is constituted by entering a house by force, threats, or fraud, at night, or in like manner by entering a house during the day and remaining concealed therein until night, with the intent in either case of committing felony or the crime of theft.' The

amendment consists in adding to the law as it previously existed the words 'or the crime of theft.'

"Doubtless the object of this amendment was to obviate any doubt or difficulty which might arise with regard to the crime of burglary, when considered in connection with two other acts passed by the same legislature, and all three of the acts approved on the same day (August 21, 1876).

"The first was 'An act to repeal Article 764' of the Penal Code (Pasc. Dig., Art. 2408), which defined and punished 'theft from a house' as a specific offense. Acts Fifteenth Legislature 233. The second was an act to amend Article 757 of the Penal Code (Pasc. Dig., Art. 2395). This latter act reads as follows:

"'Sec. 1. Theft of property under the value of twenty dollars shall be punished by imprisonment in the county jail for a term not exceeding one year—during which time the prisoner may be put to hard work—and by fine not to exceed five hundred dollars, or by such imprisonment without fine.

"'Sec. 2. That all laws and parts of laws in conflict with the provisions of this act shall be, and the same are hereby, repealed.' Acts Fifteenth Legislature, 242.

"Construing these three statutes together, it is apparent that the intention was to make the crime of burglary complete where theft was the purpose of the burglarious entry, without reference to the fact that the property was stolen 'from a house,' or whether the property stolen, or attempted to be stolen, was of the value of $20, or under, or whether it would be a felony or misdemeanor, to be ascertained and determined by value. In other words, to enter a house with intent to steal therefrom constitutes the crime of burglary under the law as it now is, without reference to the fact as to whether the theft would be a felony or not. As we have seen, 'theft from a house' is no longer a distinct offense—much less a

felony—as known to our law. *Cottenham v. The State*, 1 Texas Ct. of App. 463."

Appellant apparently would read the words "to enter a house with intent to steal *therefrom* constitutes the crime of burglary" (emphasis added) to mean that it was necessary to show intent to steal *therefrom* in order to establish burglary. Taken in the context of the explanation being given in that opinion of the statutory changes that had been enacted, we do not agree with such an interpretation of *Simms*. To say that "to enter a house with intent to steal therefrom" is *sufficient* to constitute burglary does not mean an intent to steal *therefrom* is *necessary* to constitute burglary. In the setting of *Simms* we are of the opinion the Court was stating facts sufficient, not facts necessary, to constitute burglary.

In *Thommen v. State*, 505 S.W.2d 900 (Tex.Cr.App.1974), on appeal from a conviction for burglary under the former Penal Code, the Court stated:

> "At common law, burglary was the breaking and entering of the dwelling of another, at nighttime, with intent to commit a felony therein. 12 C.J.S. Burglary § 1, p. 664 (1938). But, Texas has never adopted the common law definitions of crimes and offenses. Art. 3, V.A.P.C. From the earliest times, the offense of burglary has been defined by Texas statutes more broadly than at the common law."

■ We agree with the Court in *Thommen* and with the Court of Appeals in this case that the issue turns on the specific language of the burglary statute. As currently defined in Sec. 30.02, supra, burglary may be shown by unlawful entry with intent to commit theft. The statute does not expressly require an intent to steal property from within the burglarized premises and we hold there is no such requirement. We hold it is only necessary to prove that the unlawful entry was made for the purpose of furthering commission of the intended theft.

■ The intent with which appellant entered the habitation is a fact question for the jury to decide from the surrounding circumstances. *Stearn v. State*, 571 S.W.2d 177 (Tex.Cr.App.1978). Here the burglarious entry was intimately intertwined with appellant's intent to commit the theft. Appellant entered with the intent to commit theft, and the purpose of his unlawful entry was essential to accomplishment of the intended theft. Without making so sweeping a holding as to say that any unlawful entry committed while possessing an intent to commit a theft that is wholly unconnected to the unlawful entry would be sufficient, we find the facts here show an extremely close connection between the entry and the intent to commit theft, and that such a connection is sufficient to constitute burglary even if there was no intent to commit the theft itself within the premises.

The judgment of the Court of Appeals is affirmed.

McCORMICK and MILLER, JJ., concur in result.

CLINTON, Judge, concurring.

Ever since the successor to an Old Code article was amended by Acts 1876, 15th Leg., ch. 139, p. 231, 8 Gammel's Laws 1067, the common understanding of this kind of burglary has been that which the court found in *Simms v. The State*, 2 Tex.App. 110 (Ct.App.1877), towit: "In other words, to enter a house with intent to steal *therefrom* constitutes the crime of burglary under the law as it now is . . ."[1]

Though the opinion of the Houston (1st) Court of Appeals has now "held to the contrary," its reason is limited to the observation that V.T.C.A. Penal Code, § 30.02(a)(1) "does not specifically require an intent to commit theft from within the premises entered." *Robles v. State*, 651 S.W.2d 868 (Tex.App.1983). But then neither did Chapter 139, Acts 1876, supra, nor any later proscription, see, e.g., Article 1389, P.C. 1925—though implications throughout former Chapter Five are very

---

1. All emphasis is added by the writer of this opinion unless otherwise indicted.

strong that the intended theft was to take place within the premises. If those implications have been obliterated by the present penal code—and the majority seems to have accepted that they have—we ought to reason our way to this conclusion, and to that end I now turn.

Under the former penal codes a burglarious entry was by "force, threats or fraud" or, if into a "house"[2] in daytime, by "breaking."[3] Articles 1389, 1390 and 1391, P.C. 1925. Entry by force was "the essential element of the offense," *Livingston v. State,* 133 Tex.Cr.R. 437, 112 S.W.2d 190, 191 (1938), and when made with intent to commit theft, the notion was that "one burglarized a house," *Thurston v. State,* 132 Tex.Cr.R. 287, 103 S.W.2d 770, 772 (1937); *Galemore v. State,* 124 Tex.Cr.R. 77, 61 S.W.2d 519, 520[4] (1933). Moreover, the act of breaking and entering at nighttime raised a presumption that the act was done with intent to steal. *Byrd v. State,* 435 S.W.2d 508, 510 (Tex.Cr.App.1968).

It may be conceded that current delineation of the offense of burglary retains a good many characteristics of that crime under the former penal codes. See generally Practice Commentary following § 30.02. However, the focus has shifted from "breaking" into the house to merely entering it. Section 30.02(a)(1). Actual force in making an entry is no longer required. See

*Day v. State,* 532 S.W.2d 302, 305 (Tex.Cr. App.1975). The essential overt act of burglary is an intrusion of the human body (or any part of the body or any physical object connected with the body). Section 30.02(b). Protection against *intrusion* is "the rationale underlying Section 30.02," Practice Commentary, supra.

Since a burglarious entry made with intent to commit theft (or a felony) is the complete offense, whether any theft (or felony) is actually perpetrated thereafter, *Garcia v. State,* 571 S.W.2d 896, 899 (Tex.Cr. App.1978), just where the intruder expects to accomplish the theft (or felony) intended would seem to be of little significance.[5] The essential vice in such an entry is its intrusive nature—offending as it does personal privacy rights and interests in security of property—rather than the subjective intent of an intruder that may never be manifested.

Therefore, I would hold as a matter of law that when coupled with an entry the intent to commit theft need not be to steal property within the premises entered, but may be directed to any property the intruder intends to steal at the time entry is made.

For these reasons I would affirm the judgment of the court of appeals and, therefore, I join the judgment of this Court.

2. Within the chapter treating burglary, a "house" was "any building or structure erected for public or private use ... of whatever material it may be constructed." Article 1395, P.C. 1925. The statutory definition was uniformly held to have "the broadest signification and meaning," being "very comprehensive," *Williams v. State,* 72 Tex.Cr.R. 371, 162 S.W. 838, 839 (1914).

3. "Breaking" meant that "entry must be made with actual force," Article 1394, P.C. 1925.

4. "In dealing with burglary such as charged in the present instance, the offense is not complete unless there is an 'entry' of some kind into the building charged to have been burglarized ..."

Thus, entering an attic of a building through a hole cut in its roof was burglary even though no entry be made down through a ceiling to the main floor where goods to be stolen are stored.

*Mobley v. State,* 130 Tex.Cr.R. 159, 92 S.W.2d 1038 (1936). However, it was not necessary that the evidence show there were such articles on the premises, *Duran v. State,* 160 Tex.Cr.R. 167, 268 S.W.2d 167, 169 (1954), or in the case of a private residence that an occupant be present when it is burglarized, *Kizer v. State,* 400 S.W.2d 333, 335 (Tex.Cr.App.1966).

5. To be sure, § 30.02(a)(3) contemplates that one who enters a structure and commits or attempts to commit a felony or theft does it within the structure. And it is reasonable to say that implicit in § 30.02(a)(2) is the notion that the intent in remaining concealed after entry is to commit a felony or theft within the structure, though one may argue otherwise with some merit. But nothing in § 30.02(a)(1), except perhaps in its historical application under the former statutes, implies that the felony or theft intended by an intruder is to be committed within the structure.

TEAGUE, Judge, dissenting.

The issue that is before this Court is not whether the prosecution could have properly alleged and proved that Freddy Albert Cardenas Robles, appellant, committed a first degree felony offense. As shown by the facts of the case, it could have easily done so with a minimum of effort. The issue that is before this Court, however, is whether the prosecution proved the offense it alleged appellant had committed, namely, that appellant had entered the residence of Richard Merrill *with intent to commit the offense of theft.*

Appellant's counsel asserted on appeal and asserts in his petition for discretionary review that where the State alleges that the accused committed the offense of burglary with intent to commit theft, it must prove that the object of the entry was to appropriate something of value *therefrom* or to appropriate something of value that was located *therein.* He then argues that the State failed to prove this implied, but necessary element of the offense.

The First Court of Appeals in Houston, without referring the reader to a single published decision of any English speaking court, rejected appellant's assertion. This Court, likewise without citation of authority, affirms the holding of the Court of Appeals. Because I am now convinced that appellant's counsel is absolutely correct in his assertion, I must dissent.

Lord Coke, see 3 *Inst.,* 63, defined a burglar to be "one that, in the night-time, breaketh and entereth into a mansion house of another, with intent to kill some reasonable creature, or to commit some other felony *within the same,* whether his felonious intent be executed or not." [Emphasis Added]. "At Common Law, [however], the crime of burglary consisted of breaking and entering of a dwelling house of another in the nighttime with the intent to commit a felony *therein.*" [Emphasis Added]. *Black's Law Dictionary* 179 (5th ed. 1979).

The Common Law, in one form or another, has always been a part of Texas law. The Constitution of the Republic of Texas, 1836, Art. IV, Sec. 13, 1 *Laws of Texas,* 1074, provided: "The Congress shall, as early as possible, introduce by statute, the common law of England, with such modifications as our circumstances, in their judgments, may require; and in all criminal cases, the common law shall be the rule of decision." On January 20, 1840, see 2 *Laws of Texas,* 177, the Congress of the Republic of Texas enacted the following: "The Common Law of England (so far as it is not inconsistent with the Constitution or acts of Congress now in force) shall, together with such acts, be the rule of decisions in this Republic, and shall continue in full force until altered or repealed by Congress." Art. 38.01, V.A.C.C.P., the present Code of Criminal Procedure, provides: "The rules of evidence known to the common law of England, both in civil and criminal cases, shall govern in the trial of criminal actions in this State, except where they are in conflict with the provisions of this Code or of some statute of the State." Also see Art. 1.27, V.A.C.C.P.

Commencing in the early 1800's, States of the Union revised their respective systems of criminal law. The leading architect in this endeavor was the distinguished jurist, Mr. Livingston. See, "Livingston and the Penal Codes," 1 *Tex.L.Rev.* p. 25, at pp. 36, and 37 (1922).

Texas was not far behind in amending and revising its penal laws. In pursuance of an act of the Texas Legislature, John W. Harris, James Willie, and Oliver C. Hartley were appointed to prepare codes amending, revising and digesting the laws of Texas, civil and criminal. Relying heavily upon what Livingston had done, see supra, and what Hartley had done, see Oliver C. Hartley, *A Digest of the Laws of Texas* (1850), the three prepared and submitted to the Legislature a Penal Code and a Code of Criminal Procedure. In 1857, the Legislature adopted much of what Harris, Willie, and Hartley had done. One of the objectives of the enactment of a Penal Code for this State appears to have been to define criminal offenses in plain and simple language, and to eliminate unnecessary verbiage.

From 1857 through the most recent Legislature, efforts to define the crime of burglary in plain and simple language have ranged from being extremely generous in the use of the English language to the present burglary statute which reflects an attempt to use the least number of words possible.

The original precursor to the present burglary statute appears to have been the Legislative Act of December 21, 1836, which defined the offense of burglary as follows: "Every person who shall break and enter into any dwelling-house or store, by night, and feloniously *take therefrom* any goods, chattels, money, or other articles of value, shall be deemed guilty of burglary, and on conviction thereof shall suffer death." Hartley, *A Digest of the Laws of Texas,* 116 (1850). However, in 1848, see Legislative Act of March 20, 1848, Hartley, supra, 116, the Legislature no longer felt it was necessary to expressly state in the statute the phrase "take therefrom," presumably because it was obvious where the object sought by the burglar would be located. The phrase does not appear to have been placed in any burglary statute thereafter enacted or revised by the Legislature.

However, even though the phrase, "take therefrom," was no longer expressed in the statute, this Court's predecessor held that it was still incumbent upon the prosecution to allege that the goods intended to be stolen were in the house entered. *Sullivan v. State,* 13 Tex.App. 462 (1883). In *Sullivan v. State,* supra, the following question was asked: "Does the indictment show that the goods intended to be stolen were in the house entered?," and answered: "We think so, 'then and there being found' being in the approved form for this allegation."

My research reveals that commencing in 1876, it became the intent of the Legislature to expand the burglary statute so that non-residential structures, as well as residential structures, were included in the burglary statute, as well as manifesting an intent to establish that unlawful entry could occur other than by "breaking and entering." However, I am unable to find anywhere where any Legislature of this State has ever contemplated that the location of the object the burglar sought was to exist other than inside of the burglarized premises, and neither the opinion of the Court of Appeals nor the majority opinion refers me to a location where such might be reflected in print.

The majority opinion adopts and approves what the Court of Appeals held, and states the following: "That the statute does not expressly require an intent to steal property from within the burglarized premises and we hold there is no such requirement." Like the opinion of the Court of Appeals, the majority opinion cites no authority in support of its statement and holding. Because the majority opinion is without support in law, or reasoning, the language contained therein necessarily resembles an extremely brittle and fragile object.

Let us look at why the majority holds as it does. First, the majority attempts to show strength in its position by downplaying the decisional authorities appellant presents in support of his contention that the object of any burglary was extant in the premises sought to be burglarized. The majority states the following: "We also find that none of the cases cited by appellant held that the intent to commit theft required for burglary means an intent to steal from the burglarized premises." P. 93. However, overlooked by both appellant and the majority is the decision of *Sullivan v. State,* supra, which I have previously discussed. Although appellant did not cite *Sullivan v. State,* supra, he did cite *Sims v. State,* 2 Tex.App. 110 (1877), which contains the following statement: "In other words, to enter a house with intent to steal therefrom constitutes the crime of burglary under the law as it now is ..." This, of course, is in accord with what the Court of Appeals later stated in *Sullivan v. State,* supra.

The majority, apparently in an effort to close out its opinion in style, seizes upon a general statement found in *Thommen v. State,* 505 S.W.2d 900 (Tex.Cr.App.1974), to-wit: "From the earliest times, the of-

fense of burglary has been defined by Texas statutes more broadly than at the common law." This statement, at first blush, might appear to overcome what I have previously attempted to state, that substantively there has not really been much change in the offense of burglary since the Common Law. However, if one carefully reads *Thommen v. State,* supra, I believe he will find that what this Court was referring to when it made the statement the majority quotes had nothing whatsoever to do with where the object of the intent of the burglar might exist. Instead, the Court was pointing out that, contrary to the elements of the offense of burglary as it existed at Common Law, Texas had provided in its statutory scheme for the offense that unlawful entry could occur other than by mere breaking and entering, such as "by entering a house by fraud, at night, or in like manner by entering a house during the day, and remaining concealed therein until night, with the intent, in either case, of committing felony or the crime of theft," or "by entering a house at any time, either day or night, and remaining concealed therein, with the intent, in either case, of committing felony or the crime of theft." Thus, the issue that confronted the Court in *Thommen v. State,* supra, was not whether the object of the burglar was extant in the burglarized premises, but, instead, how the term "concealment" was to be construed.

For all of the above reasons, the majority opinion should be unacceptable to reasonable minded persons.

If approved, I find that the majority opinion will give birth to what will cause members of the trial judiciary and members of the appellate judiciary of this State many a sleepless night. By the majority opinion's holding, a defendant may now be convicted of burglary of a habitation, (or a building), where it is only alleged that he committed the burglary with the intent to commit theft. The object the burglar seeks need not be within the burglarized premises. In light of this holding, I must ask the following question: Because the majority's holding does not restrict the prosecution to prove that the defendant gained unlawful

entry while possessing an intent to commit a theft inside of the burglarized premises, but may now prove "with intent to commit theft," by establishing that what the burglar sought was at another and different location, if the ultimate purpose or object of what the defendant sought is intimately intertwined with the defendant's intent to commit theft when he entered the burglarized premises, will the defendant now be entitled to have a motion to quash the information or indictment, where it only alleges "with intent to commit theft," granted by the trial court? If the trial court overrules the motion, will the appellate courts of this State, including this Court, be required to reverse the defendant's conviction solely for this reason?

For all of the above and foregoing reasons, I respectfully dissent.

ONION, P.J., joins.