

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00071-CR

| | | |
|---|---|---|
| Anthony Darell Turner | § | From the 372nd District Court |
| | § | of Tarrant County (1190902D) |
| v. | § | February 14, 2013 |
| | § | Opinion by Justice Gabriel |
| The State of Texas | § | (nfp) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Lee Gabriel



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00070-CR
### NO. 02-11-00071-CR

ANTHONY DARELL TURNER                                              APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

As part of a plea-bargain agreement in August 2009, Appellant Anthony Darell Turner received two years' deferred-adjudication community supervision (probation) for pleading guilty to assaulting Shaunita Skinner, a member of his

---

[1]*See* Tex. R. App. P. 47.4.

family or household.[2]  In January 2010, while on probation for that offense, he assaulted his girlfriend, Ashford "Monique" Sneed, causing her to have a sudden fatal heart attack.  A jury found Appellant guilty of Monique's murder, and the trial court sentenced him to fifty years' confinement.  The trial court also adjudicated Appellant's guilt and revoked his probation in the assault case and stacked a ten-year sentence for it on top of the fifty-year sentence for murder.

Appellant appeals both cases.  In four points, he challenges the sufficiency of the evidence to support his conviction for murder and the sentence imposed for the assault.  We affirm both judgments.

### Sufficiency of the Evidence in Cause 1190902D Murder

Conceding that the evidence is sufficient to show that he assaulted Monique and that he told her he was going to kill her, Appellant contends that the evidence is nevertheless insufficient to support his conviction for murder because the State failed to prove intent and causation.[3]  More specifically, in his first point he claims that the evidence is insufficient to show that he intentionally or knowingly caused Monique's death; in his second, that the evidence is

---

[2]Because Shaunita was a member of Appellant's family or household, and Appellant had a prior conviction for assaulting a family or household member, his assault against Shaunita was a third-degree felony.  Tex. Penal Code Ann. § 22.01(b)(2)(A) (West 2011).

[3]The indictment charged Appellant with murder under each theory listed in section 19.02 of the penal code.  *See* Tex. Penal Code Ann. § 19.02(b) (West 2011).  The court's charge to the jury listed the theories in the disjunctive, and the jury returned a general verdict of guilty.  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 1(a) (West Supp. 2012).

2

insufficient to show that he committed an act clearly dangerous to human life with intent to cause serious bodily injury; and in his third, insufficient to show that he intentionally or knowingly committed an act clearly dangerous to human life that caused Monique's death. *See* Tex. Penal Code Ann. § 19.02(b) (West 2011).

**Standard of Review**

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 Tex. Crim. App. 2012). This standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Whether a defendant had the intent to kill is a question of fact for the jury to determine. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 938 (2004). In determining the sufficiency of the evidence to show intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Intent is a fact question for the jury, and is almost always proven through

3

evidence of the circumstances surrounding the crime. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). A jury may infer intent from any facts that tend to prove its existence, including the acts, words, and conduct of the accused, the method of committing the crime, and the nature of wounds inflicted on the victims. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 974 (1992); *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. [Panel Op.] 1982); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. [Panel Op.] 1980).

### *Appellant intentionally or knowingly caused Monique's death.*

Although he concedes that the evidence is sufficient to show he assaulted Monique and told her he was going to kill her, Appellant asserts that the autopsy photographs and the testimony of school employees, who overheard the assault as it took place, "indisputably prove" that he "lacked the intent to kill."

The evidence showed that Monique had placed a call on her cell phone to her child's elementary school and that the phones stayed connected during the time of the assault. Employees of the school testified that they overhead the assault as it took place and that it continued for approximately twenty-nine minutes. The witnesses testified that they heard the sounds of a man beating a woman as she begged him to stop and that the beating continued until the woman was moaning and the line went dead. Appellant concedes that he hit and kicked Monique and that the male voice the witnesses heard over the phone as

4

he did so was his.  As the following excerpts reflect, three witnesses testified that they heard Appellant tell Monique that he was going to kill her:

*Elizabeth Ungacta*

Q.  Did you ever hear any threats or anything?

A.  Yes.

Q.  And what—what threats did you hear?

A.  That he was going to kill her.

Q.  So the man was saying he was going to kill her?

A.  Yes.

*Debra Williamson*

Q.  Anything else?

A.  At one point I heard, "Get up."  I heard a male voice say, "I'm going to kill you."

Q.  That was the male voice?

A.  Yes.

Q.  Anything else that you can recall?

A.  There were some derogatory remarks, and eventually I heard a male voice say the name "Monique."

*Laurie Sager*

Q.  Now, you mentioned during the conversation [with the 911 operator], during the second one, that you heard the male say—make statements about killing her; is that correct?

A.  Yes.

Q.  How many times did you hear him make that statement?

5

A. Twice.

It appears that Appellant would have us hold—even in the light most favorable to the verdict—that no rational juror who heard testimony that Appellant told Monique he was going to kill her—could believe beyond a reasonable doubt that he intended to. Appellant argues that evidence that he said—"Get up, Monique; I'm going to kill you," as he beat her—"should be analyzed in its proper context." We agree: the statement should be analyzed in the context of a beating that, according to evidence in the record, lasted for up to half an hour. We also agree that a "logical interpretation" is that "Appellant was angry," and "had taken his anger out on Monique" by attacking her. We further agree, as far as it goes, that an "idle threat to kill someone uttered out of anger simply does not translate into an intentional or knowing killing." But we reject the underlying premise that the threat in this case was "idle." We also disagree with Appellant's conclusion, unsupported by any cited authority, that his "words, actions, and the autopsy pictures taken as a whole and placed in their logical context disproves that [he] intended to kill Monique." To the contrary, a rational juror having heard testimony that Appellant told Monique he was going to kill her as he inflicted upon her the injuries the autopsy photographs depict, could reasonably have concluded beyond a reasonable doubt that he intended to kill her. *See Hernandez*, 819 S.W.2d at 810; *Roberson v. State*, 144 S.W.3d 34, 40 (Tex. App.—Fort Worth 2004, pet. ref'd). To the extent that it challenges the

6

sufficiency of the evidence to prove he had the requisite intent, Appellant's first point is overruled.

As for causation, under section 6.04(a) of the penal code, a person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. Tex. Penal Code Ann. § 6.04(a) (West 2011). The jury charge tracked this penal code definition.

Tarrant County Deputy Medical Examiner Dr. Lloyd White performed an autopsy on Monique. He testified that her death was a homicide—that "she died from an arrhythmic sudden cardiac death during assault by another person; in other words, the heart stopped during the course of an assault." He further testified that but for the fact that Monique was assaulted "she would not have had this heart attack."

Tarrant County Chief Medical Examiner Dr. Nizam Peerwani referred to the case as a "no-brainer." He testified that he and his forensics team concluded "very quickly" that Monique died from "sudden fatal arrhythmia resulting from a prolonged assault and that her manner of death is homicide." He further testified that he agreed with Dr. White's assessment that Monique would not have died when she did "but for the prolonged assault."

Viewed in the light most favorable to the verdict, we hold that a rational juror could have concluded beyond a reasonable doubt that Monique's death

7

would not have occurred when it did but for Appellant's conduct operating concurrently with her underlying heart condition. *See id.*; *Thompson v. State*, 93 S.W.3d 16, 21–22 (Tex. Crim. App. 2001), *cert. denied*, 540 U.S. 899 (2003) (applying section 6.04(a) and holding that, even assuming concurrent cause of death was insufficient, appellant's conduct was not insufficient so as to warrant reversal on the ground that the State did not prove causation); *Gonzales v. State*, 505 S.W.2d 819, 820 (Tex. Crim. App. 1974) (holding that the fact that a hematoma could be caused by something other than a blow to the head by appellant, and the possibility that the decedent entered the hospital with pneumonia were of no consequence in determining sufficiency of the evidence to support trial court's refusing directed verdict); *Wright v. State*, 388 S.W.2d 703, 706 (Tex. Crim. App. 1965) ("If the act of the defendant as alleged in the indictment contributed to the death of the deceased, he is responsible though there were other concurring causes.")  Accordingly, we overrule the remainder of Appellant's first point.[4]

---

[4]By claiming in his brief that the State's theory that he intentionally or knowingly caused Monique's death "is the easiest to dispel," we take Appellant to concede that his first point is the strongest of the three challenging the sufficiency of the evidence to support his conviction for murder.  We would hold that the evidence is also sufficient to support his conviction under the State's other two theories.  But given Appellant's concession and because our resolution of his first point disposes of the appeal from his murder conviction, we need not address the arguments presented in his second and third points. *See* Tex. R. App. 47.1.

**Punishment in Cause 1162246D Assault**

In his fourth point, Appellant claims that after the trial court adjudicated his guilt and revoked his probation in the assault case, it abused its discretion by sentencing him to ten years' confinement stacked onto the fifty-year sentence for murder.

Appellant appears to concede that the sentence is within the statutory range, but he also seems to argue that the trial court's imposing the maximum punishment violates the Eighth Amendment because the evidence is insufficient in the murder case. We have already held that the evidence is sufficient to support the jury's verdict in the murder case so the premise underlying Appellant's argument fails. Moreover, although Appellant objected when the trial court ordered consecutive sentences, he does not argue on appeal how the trial court abused its discretion in doing so. Further, he did not object to the length of the sentence imposed in the assault case at the time it was imposed or in a motion for new trial, and he makes no argument based upon the facts of the assault case to show that the trial court's assessment of punishment, which, again, he concedes is within the statutory range, was grossly disproportionate or otherwise improper. Accordingly, we overrule Appellant's fourth point. *See Russell v. State*, 341 S.W.3d 526, 528 (Tex. App.–-Fort Worth 2011, no pet.).

## Conclusion

Having overruled Appellant's sole point in his appeal from his assault conviction in cause 11622462D, as well as the dispositive point in his appeal from his conviction for murder in cause 1190902D, we affirm the trial court's judgments in both cases.

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 14, 2013

10