02-11-070&071-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00071-CR

 

 









 
 
 Anthony
 Darell Turner
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 372nd District
 Court
  
 of
 Tarrant County (1190902D)
  
 February
 14, 2013
  
 Opinion
 by Justice Gabriel
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 








 

 

 

By_________________________________

   
Justice Lee Gabriel

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00070-CR

NO. 02-11-00071-CR

 


 
 
 Anthony Darell Turner
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
  
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 372nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

          As
part of a plea-bargain agreement in August 2009, Appellant Anthony Darell
Turner received two years’ deferred-adjudication community supervision
(probation) for pleading guilty to assaulting Shaunita Skinner, a member of his
family or household.[2]  In January 2010, while
on probation for that offense, he assaulted his girlfriend, Ashford “Monique”
Sneed, causing her to have a sudden fatal heart attack.  A jury found Appellant
guilty of Monique’s murder, and the trial court sentenced him to fifty years’
confinement.  The trial court also adjudicated Appellant’s guilt and revoked
his probation in the assault case and stacked a ten-year sentence for it on top
of the fifty-year sentence for murder.

          Appellant
appeals both cases.  In four points, he challenges the sufficiency of the
evidence to support his conviction for murder and the sentence imposed for the
assault.  We affirm both judgments.

Sufficiency
of the Evidence in Cause 1190902D Murder

          Conceding
that the evidence is sufficient to show that he assaulted Monique and that he
told her he was going to kill her, Appellant contends that the evidence is nevertheless
insufficient to support his conviction for murder because the State failed to
prove intent and causation.[3]  More specifically, in his
first point he claims that the evidence is insufficient to show that he
intentionally or knowingly caused Monique’s death; in his second, that the
evidence is insufficient to show that he committed an act clearly dangerous to
human life with intent to cause serious bodily injury; and in his third,
insufficient to show that he intentionally or knowingly committed an act
clearly dangerous to human life that caused Monique’s death.  See Tex.
Penal Code Ann. § 19.02(b) (West 2011).

Standard
of Review

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wise v.
State, 364 S.W.3d 900, 903 Tex. Crim. App. 2012).  This standard of review
is the same for direct and circumstantial evidence cases; circumstantial
evidence is as probative as direct evidence in establishing guilt.  Isassi
v. State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); Hooper v. State,
214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

          Whether
a defendant had the intent to kill is a question of fact for the jury to
determine.  Brown v. State, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003), cert.
denied, 541 U.S. 938 (2004).  In determining the sufficiency of the
evidence to show intent, and faced with a record that supports conflicting
inferences, we “must presume—even if it does not affirmatively appear in the
record—that the trier of fact resolved any such conflict in favor of the
prosecution, and must defer to that resolution.”  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991).  Intent is a fact question for the
jury, and is almost always proven through evidence of the circumstances
surrounding the crime.  Robles v. State, 664 S.W.2d 91, 94 (Tex. Crim. App.
1984).  A jury may infer intent from any facts that tend to prove its
existence, including the acts, words, and conduct of the accused, the method of
committing the crime, and the nature of wounds inflicted on the victims.  Hernandez
v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), cert. denied,
504 U.S. 974 (1992); Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App.
[Panel Op.] 1982); Beltran v. State, 593 S.W.2d 688, 689 (Tex. Crim.
App. [Panel Op.] 1980).

Appellant intentionally or knowingly
caused Monique’s death.

 

          Although
he concedes that the evidence is sufficient to show he assaulted Monique and
told her he was going to kill her, Appellant asserts that the autopsy
photographs and the testimony of school employees, who overheard the assault as
it took place, “indisputably prove” that he “lacked the intent to kill.”

          The
evidence showed that Monique had placed a call on her cell phone to her child’s
elementary school and that the phones stayed connected during the time of the
assault.  Employees of the school testified that they overhead the assault as
it took place and that it continued for approximately twenty-nine minutes.  The
witnesses testified that they heard the sounds of a man beating a woman as she
begged him to stop and that the beating continued until the woman was moaning
and the line went dead.  Appellant concedes that he hit and kicked Monique and
that the male voice the witnesses heard over the phone as he did so was his.  As
the following excerpts reflect, three witnesses testified that they heard Appellant
tell Monique that he was going to kill her:

          Elizabeth
Ungacta

          Q. 
Did you ever hear any threats or anything?

          A. 
Yes.

          Q. 
And what––what threats did you hear?

          A. 
That he was going to kill her.

          Q. 
So the man was saying he was going to kill her?

          A. 
Yes.

          Debra
Williamson

          Q. 
Anything else?

          A.  At one
point I heard, “Get up.”  I heard a male voice say, “I’m going to kill you.”

 

          Q. 
That was the male voice?

          A. 
Yes.

          Q. 
Anything else that you can recall?

          A.  There
were some derogatory remarks, and eventually I heard a male voice say the name
“Monique.”

 

          Laurie
Sager

          Q.  Now,
you mentioned during the conversation [with the 911 operator], during the
second one, that you heard the male say––make statements about killing her; is
that correct?

 

          A. 
Yes.

          Q. 
How many times did you hear him make that statement?

          A. 
Twice.

          It
appears that Appellant would have us hold––even in the light most favorable to
the verdict––that no rational juror who heard testimony that Appellant told Monique
he was going to kill her––could believe beyond a reasonable doubt that he intended
to.  Appellant argues that evidence that he said––“Get up, Monique; I’m going
to kill you,” as he beat her––“should be analyzed in its proper context.”  We
agree:  the statement should be analyzed in the context of a beating that,
according to evidence in the record, lasted for up to half an hour.  We also
agree that a “logical interpretation” is that “Appellant was angry,” and “had
taken his anger out on Monique” by attacking her.  We further agree, as far as
it goes, that an “idle threat to kill someone uttered out of anger simply does
not translate into an intentional or knowing killing.”  But we reject the
underlying premise that the threat in this case was “idle.”  We also disagree
with Appellant’s conclusion, unsupported by any cited authority, that his
“words, actions, and the autopsy pictures taken as a whole and placed in their
logical context disproves that [he] intended to kill Monique.”  To the
contrary, a rational juror having heard testimony that Appellant told Monique he
was going to kill her as he inflicted upon her the injuries the autopsy
photographs depict, could reasonably have concluded beyond a reasonable doubt
that he intended to kill her.  See Hernandez, 819 S.W.2d at 810; Roberson
v. State, 144 S.W.3d 34, 40 (Tex. App.––Fort Worth 2004, pet. ref’d.).  To
the extent that it challenges the sufficiency of the evidence to prove he had
the requisite intent, Appellant’s first point is overruled.

          As
for causation, under section 6.04(a) of the penal code, a person is criminally
responsible if the result would not have occurred but for his conduct,
operating either alone or concurrently with another cause, unless the
concurrent cause was clearly sufficient to produce the result and the conduct
of the actor clearly insufficient.  Tex. Penal Code Ann. § 6.04(a) (West 2011). 
The jury charge tracked this penal code definition.

          Tarrant
County Deputy Medical Examiner Dr. Lloyd White performed an autopsy on
Monique.  He testified that her death was a homicide––that “she died from an
arrhythmic sudden cardiac death during assault by another person; in other
words, the heart stopped during the course of an assault.”  He further
testified that but for the fact that Monique was assaulted “she would not have
had this heart attack.”

          Tarrant
County Chief Medical Examiner Dr. Nizam Peerwani referred to the case as a
“no-brainer.”  He testified that he and his forensics team concluded “very
quickly” that Monique died from “sudden fatal arrhythmia resulting from a
prolonged assault and that her manner of death is homicide.”  He further
testified that he agreed with Dr. White’s assessment that Monique would not
have died when she did “but for the prolonged assault.”

          Viewed
in the light most favorable to the verdict, we hold that a rational juror could
have concluded beyond a reasonable doubt that Monique’s death would not have
occurred when it did but for Appellant’s conduct operating concurrently with
her underlying heart condition.  See id.; Thompson v. State, 93
S.W.3d 16, 21–22 (Tex. Crim. App. 2001), cert. denied, 540 U.S. 899
(2003) (applying section 6.04(a) and holding that, even assuming concurrent
cause of death was insufficient, appellant’s conduct was not insufficient so as
to warrant reversal on the ground that the State did not prove causation); Gonzales
v. State, 505 S.W.2d 819, 820 (Tex. Crim. App. 1974) (holding that the fact
that a hematoma could be caused by something other than a blow to the head by
appellant, and the possibility that the decedent entered the hospital with
pneumonia were of no consequence in determining sufficiency of the evidence to
support trial court’s refusing directed verdict); Wright v. State, 388
S.W.2d 703, 706 (Tex. Crim. App. 1965) (“If the act of the defendant as alleged
in the indictment contributed to the death of the deceased, he is responsible
though there were other concurring causes.”)  Accordingly, we overrule the
remainder of Appellant’s first point.[4]

Punishment
in Cause 1162246D Assault

          In
his fourth point, Appellant claims that after the trial court adjudicated his
guilt and revoked his probation in the assault case, it abused its discretion
by sentencing him to ten years’ confinement stacked onto the fifty-year
sentence for murder.

          Appellant
appears to concede that the sentence is within the statutory range, but he also
seems to argue that the trial court’s imposing the maximum punishment violates
the Eighth Amendment because the evidence is insufficient in the murder case. 
We have already held that the evidence is sufficient to support the jury’s verdict
in the murder case so the premise underlying Appellant’s argument fails.  Moreover,
although Appellant objected when the trial court ordered consecutive sentences,
he does not argue on appeal how the trial court abused its discretion in doing
so.  Further, he did not object to the length of the sentence imposed in the
assault case at the time it was imposed or in a motion for new trial, and he makes
no argument based upon the facts of the assault case to show that the trial
court’s assessment of punishment, which, again, he concedes is within the
statutory range, was grossly disproportionate or otherwise improper.  Accordingly,
we overrule Appellant’s fourth point.  See Russell v. State, 341 S.W.3d
526, 528 (Tex. App.–-Fort Worth 2011, no pet.).

Conclusion

          Having
overruled Appellant’s sole point in his appeal from his assault conviction in
cause 11622462D, as well as the dispositive point in his appeal from his conviction
for murder in cause 1190902D, we affirm the trial court’s judgments in both
cases.

 

 

 

LEE GABRIEL
JUSTICE

 

 

PANEL: 
WALKER, MCCOY,
and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  February 14,
2013








 









[1]See Tex. R. App. P. 47.4.





[2]Because
Shaunita was a member of Appellant’s family or household, and Appellant had a
prior conviction for assaulting a family or household member, his assault
against Shaunita was a third-degree felony.  Tex. Penal Code Ann. § 22.01(b)(2)(A)
(West 2011).





[3]The
indictment charged Appellant with murder under each theory listed in section
19.02 of the penal code.  See Tex. Penal Code Ann. § 19.02(b) (West
2011).  The court’s charge to the jury listed the theories in the disjunctive,
and the jury returned a general verdict of guilty.  See Tex. Code Crim.
Proc. Ann. art. 37.07, § 1(a) (West Supp. 2012).





[4]By
claiming in his brief that the State’s theory that he intentionally or
knowingly caused Monique’s death “is the easiest to dispel,” we take Appellant
to concede that his first point is the strongest of the three challenging the
sufficiency of the evidence to support his conviction for murder.  We would
hold that the evidence is also sufficient to support his conviction under the
State’s other two theories.  But given Appellant’s concession and because our
resolution of his first point disposes of the appeal from his murder
conviction, we need not address the arguments presented in his second and third
points. See  Tex. R. App. 47.1.