In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________


 

NO. 09-03-235 CR


____________________



BRUCE ALLEN MARX, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Court Cause No. 84,732






MEMORANDUM OPINION


 Bruce Allen Marx was convicted of burglary of a building under section 30.02 of
the Texas Penal Code. See Tex. Penal Code Ann. § 30.02 (Vernon 2003). The trial
court sentenced Marx to two years of imprisonment in the state jail division of the Texas
Department of Criminal Justice, which was suspended and probated for five years, and a
$500.00 fine. In this appeal, Marx argues the evidence was legally and factually
insufficient to support the conviction, he did not receive effective assistance of counsel,
and the trial court erred in failing to grant counsel's motion for continuance. 

Sufficiency of the Evidence


 In his first issue, Marx says the evidence is legally and factually insufficient to
support the verdict. In reviewing an issue of legal sufficiency, an appellate court views
the evidence in the light most favorable to the verdict to determine whether a rational fact
finder could have found each element of the offense beyond a reasonable doubt. See
Conner v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) (citing Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). When addressing issues of
factual sufficiency, the appellate court asks whether, considering all of the evidence in a
neutral light, the jury was rationally justified in finding guilt beyond a reasonable doubt. 
See Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). An appellate court
"must give due deference to the fact finder's determinations concerning the weight and
credibility of the evidence and will reverse the fact finder's determination only to arrest
the occurrence of a manifest injustice." Swearingen v. State, 101 S.W.3d 89, 97 (Tex.
Crim. App. 2003) (en banc). In a bench trial, the trial court, as the finder of fact, may
resolve any conflicts in the evidence, evaluate the credibility of the witnesses, and
determine the weight to be given any particular evidence. See Winkley v. State, 123
S.W.3d 707, 711(Tex. App.--Austin 2003, no pet.); see also Cain v. State, 958 S.W.2d
404, 408-409 (Tex. Crim. App. 1997); see also Joseph v. State, 897 S.W.2d 374, 376
(Tex. Crim. App. 1995).

 The complainant testified he is a psychiatrist who practices in Beaumont, Texas.
According to complainant, he hired Marx as a part-time physician assistant. Complainant
stated he terminated Marx by telephone on May 14, 2001, because he received complaints
about Marx from patients. Complainant stated Marx's office privileges ceased on the date
of termination. Complainant had a conversation with Marx on May 16, during which
Marx stated he wanted complainant to continue paying him. Complainant testified Marx
said, if complainant did not pay Marx, Marx would report complainant to the Board of
Medical Examiners for billing fraud and failure to adequately supervise Marx. According
to complainant, Marx told him he could prove his allegations because he had entered
complainant's office on May 14, made copies of records, and took the copies home.
Complainant stated Marx did not have permission to enter the office after hours on May
14. Marx told complainant he wanted "a bigger piece of the pie," and complainant felt
Marx was threatening to blackmail him. Complainant stated he subsequently learned Marx
had entered his office by using a key he had been given when he was hired. 

 Malana Rideaux, a colleague of Marx's from another job, testified Marx told her
he intended to break into complainant's office to obtain records with which to blackmail
complainant. Rideaux testified when she told Marx that entering complainant's office
sounded illegal, Marx responded "I still have a key." Subsequently, Marx told Rideaux
and another witness, Jo Lynn Bailey, that he had entered complainant's office and copied
the medical records. Bailey testified she received a phone call from personnel in
complainant's office, and the caller asked her to tell Marx his services were no longer
required. Bailey stated she called Marx to the phone instead of relaying the message, and
that Marx later told her complainant had fired him. Bailey stated Marx also told her he
hoped to meet with complainant soon to get his job back. 

 Myra Gothe, an employee of the cleaning service employed to clean complainant's
offices, stated she saw a note to her from Marx saying "Myra, would you come by the
office -- Bruce." Gothe stated she was aware defendant had worked at complainant's
office. Gothe testified that, when she entered the lobby, she saw Marx heading toward
her. When he reached her, he asked whether complainant came to the office after hours,
and she responded that he sometimes did. Upon entering complainant's office after hours,
Gothe saw Marx and his fiancée in complainant's office, and it appeared they were
copying medical records.

 Complainant's office manager, Karen Jones, testified that she was present when
complainant terminated Marx by telephone on May 14, 2001. Jones also stated 
complainant called her into his office during the post-termination meeting with Marx, and
that complainant asked her if she had given Marx a key when he was hired. Jones
indicated she asked Marx to return the key, and he did so. 

 Marx testified he became concerned about certain practices at complainant's office,
including billing patients' visits with Marx as visits with complainant, complainant's
absence from the office much of the time, failure to adequately supervise Marx, and
leaving prescription pads for controlled substances endorsed in blank for non-licensed staff
to fill in the quantity of medication. Marx stated complainant's office manager had given
him a key, without restrictions as to its use, when he began his employment with
complainant. Marx testified that he entered complainant's office and made approximately
one hundred copies of medical records. He denied telling Rideaux he intended to report
complainant if complainant did not rehire him and give him a raise. Marx denied telling
Rideaux he intended to copy complainant's records, and he also denied Rideaux ever
questioned the legality of copying the records. Marx testified that, after he copied the
records, he told Rideaux and Bailey he had done so.

 Section 30.02(a) of the Penal Code provides as follows:

 (a) A person commits an offense if, without the effective consent of the
owner, the person:

 (1) enters a habitation, or a building (or any portion of a building)
not then open to the public, with intent to commit a felony,
theft, or an assault; or

 (2) remains concealed, with intent to commit a felony, theft, or an
assault, in a building or habitation; or

 (3) enters a building or habitation and commits or attempts to
commit a felony, theft, or an assault. 

 

See Tex. Penal Code Ann. § 30.02(a) (Vernon 2003). It is intent, not the character or
value of what is stolen, that makes the offense of burglary complete. Garcia v. State, 571
S.W.2d 896, 898 (Tex. Crim. App. 1978). Furthermore, burglary "does not expressly
require an intent to steal property from within the burglarized premises and . . . ." Robles
v. State, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). In Robles, the Court of Civil
Appeals held "it is only necessary to prove that the unlawful entry was made for the
purpose of furthering commission of the intended theft." Id. As fact finder, it was the
exclusive province of the trial court to assess the credibility of witnesses and the weight
to be given their testimony, and to resolve any conflicts in the evidence. See Winkley, 123
S.W.3d at 711; see also Cain, 958 S.W.2d at 408-409; see also Joseph, 897 S.W.2d at
376. 

 The complainant testified he had terminated Marx on the date of the offense, and
Marx did not have permission to be in complainant's office. Marx admitted he entered
complainant's office and made approximately one hundred copies of medical records. He
testified he used his own copy paper. Complainant testified Marx informed him of the
copies and attempted to blackmail him. 

 Viewing the record in the light most favorable to the court's determination, the
evidence is legally sufficient to support the fact finder's determination that Marx entered
the building without the effective consent of the owner to obtain copies of the records. 
The court could have concluded the intent was not to report any billing infraction to proper
authorities, but to force complainant to continue paying Marx money to avoid his reporting
of the records, and that the entry into the building and taking of the records was without
the owner's consent. Furthermore, a neutral review of the entire record does not
demonstrate the proof of guilt is so obviously weak as to undermine confidence in the fact
finder's determination, nor does it demonstrate that the proof of guilt is greatly outweighed
by contrary proof. The evidence is factually sufficient to support the verdict. Marx's first
issue is overruled.

Assistance of Counsel


 To prevail on a claim of ineffective assistance of counsel, appellant must satisfy a
two-pronged test:

 First, the defendant must show that counsel's performance was deficient. 
This requires showing that counsel made errors so serious that counsel was
not functioning as the "counsel" guaranteed the defendant by the Sixth
Amendment. Second, the defendant must show that the deficient
performance prejudiced the defense. This requires showing that counsel's
errors were so serious as to deprive the defendant of a fair trial, a trial
whose result is reliable. 


Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
see also Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Texas courts
have held that Strickland requires appellant to show a reasonable probability that, but for
his counsel's errors, the outcome would have been different. See Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellate review of defense counsel's
representation is highly deferential and presumes that counsel's actions fell within the wide
range of reasonable and professional assistance." Id. Appellant must prove there was no
plausible professional reason for specific acts or omissions of his counsel. Id. at 836. 
Furthermore, "[a]ny allegation of ineffectiveness must be firmly founded in the record,
and the record must affirmatively demonstrate the alleged ineffectiveness." Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing McFarland v. State, 928 S.W.2d
482, 500 (Tex. Crim. App. 1996)). The mere fact that another attorney might have tried
the case differently does not support a finding of ineffective assistance of counsel. See
Hawkins v. State, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

 Marx argues his counsel was ineffective when counsel convinced Marx to waive his
right to jury trial. Marx's counsel stated in his affidavit in support of Marx's motion for
new trial that "This was not a trial tactic by me, but I made this recommendation because
I felt uncomfortable trying this matter to a jury. If it were not for me feeling
uncomfortable, Mr. Marx would not have waived his right to a trial by jury." The record
reflects Marx made a voluntary decision to waive a jury trial though he knew the reason
for his attorney's advice. Nevertheless, assuming without deciding that Marx's counsel
fell below professional norms by advising Marx to waive his right to jury trial because
counsel felt "uncomfortable," Marx has not shown that, but for his choice of the judge as
fact finder, the result would have been different. See Strickland, 466 U.S. at 687. 

 Marx also argues his counsel had "no real understanding" of how to present what
he calls a "whistle blower defense" to the trial court. However, Marx does not point to
any specific acts or omissions of his counsel which fell below professional norms, nor does
he point to any specific evidence which would have been admitted but for his counsel's
alleged ineffectiveness. Rather, Marx makes general accusations of ineffectiveness. Any
allegations of ineffectiveness must be firmly grounded in the record, and the record must
affirmatively demonstrate counsel's alleged ineffectiveness. See Thompson, 9 S.W.3d at
813. In this case, the record does not demonstrate that counsel was ineffective. Marx has
failed to meet his burden under Strickland. Marx's second issue is overruled.

 In his final issue, Marx contends the trial court abused its discretion when it failed
to grant a continuance based upon the medical emergency of Marx's co-counsel.
Approximately one month after entering an appearance on behalf of Marx, counsel
requested a continuance based upon the medical emergency of co-counsel. The documents
filed in support of counsel's motion for continuance indicated co-counsel was to be
responsible for "presentation and arguments of facts to the jury," while counsel was to be
responsible for presentation and argument of legal issues. Also among the supporting
documents was a letter from co-counsel's physician, which stated co-counsel "currently
has a serious medical condition that will require surgery, likely this week, and he will be
unable to participate in any court proceedings from [dates given]." The supporting
documents also stated "[e]videntiary and interview information for the central witnesses"
were locked in co-counsel's office, and possibly could not be promptly accessed. The
appearance of co-counsel was filed by counsel as "Attorney in Charge for Marx." 

 The decision whether to grant or to deny a continuance is within the sound
discretion of the trial court. See Janecka v. State, 937 S.W.2d 456, 468 (Tex. Crim. App.
1996); see also Hernandez v. State, 643 S.W.2d 397, 399 (Tex. Crim. App. 1982). An
appellate court may reverse the trial court's decision only for abuse of discretion. 
Hernandez, 643 S.W.2d at 399. The trial court was in the best position to determine
whether further delay was warranted under the circumstances. To prevail, Marx must
demonstrate that he was prejudiced by inadequate time. Duhamel v. State, 717 S.W.2d
80, 83 (Tex. Crim. App. 1986). On this record Marx has not shown how he was
prejudiced by the denial of the motion for continuance. Marx's third issue is overruled.

 The judgment of the trial court is affirmed. 

 

 AFFIRMED. 


 PER CURIAM


Submitted on October 21, 2004

Opinion Delivered December 22, 2004

Do Not Publish

 

Before McKeithen, C.J., Burgess and Gaultney, JJ.